1                                                                              O

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   WESTERN GROWERS                    Case No. 5:21-cv-00602-JWH-KKx
         ASSOCIATION;
12   CALIFORNIA FRESH FRUIT
         ASSOCIATION; and            **MEMORANDUM OPINION AND**
13   GROWING COACHELLA VALLEY,       **ORDER (1) GRANTING**
                                     **DEFENDANTS' MOTION TO**
14                Plaintiffs,        **DISMISS [ECF No. 11]; AND**
                                     **(2) DENYING PLAINTIFFS'**
15        v.                         **MOTION FOR PRELIMINARY**
                                     **INJUNCTION [ECF No. 14]**
16   CITY OF COACHELLA;
     STEVEN HERNANDEZ;
17   JOSIE GONZALEZ;
     MEGAN BEAMAN JACINTO;
18   DENISE DELGADO; and
     NETALI GALARZA,
19
                  Defendant.
20

21

22

23

24

25

26

27

28

# I.  **INTRODUCTION**

This case concerns the Premium Pay for Grocery Workers Ordinance (the "Hero Pay Ordinance" or "Ordinance") enacted by Defendant City of Coachella (the "City"),[1] which mandates that agricultural workers and grocery workers (among other classes of employees) employed by designated employers in the area must be paid at a rate of $4.00 more than their hourly wage for a period of at least 120 days.  The Ordinance also prohibits designated employers from circumventing its effect by reducing a worker's compensation or limiting a worker's earning capacity.

Plaintiffs Western Growers Association ("WGA"), California Fresh Fruit Association ("CFFA"), and Growing Coachella Valley ("GCV") filed this action on behalf of their members, claiming that the Ordinance is invalid under federal and state constitutional law and under the California Government Code.

Two matters are pending before the Court for decision:  (1) the motion of Plaintiffs for a preliminary injunction;[2] and (2) the motion of Defendants to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[3] (jointly, the "Motions").  After hearing extensive oral argument, the Court took the Motions under submission.  Having thoroughly considered the parties' briefing, counsel's oral argument at the hearing, and the relevant record,[4] the Court orders that the City's motion to dismiss is

---

[1]  As explained in detail below, the Ordinance was first enacted as an urgency ordinance and then as a regular ordinance.

[2]  *See* Pls.' Mot. for Prelim. Inj. ("Pls.' Motion") [ECF No. 14]; Defs.' Opp'n to Pls.' Motion ("Defs.' Opposition") [ECF No. 19]; and Pls.' Reply in Supp. of Pls.' Motion ("Pls.' Reply") [ECF No. 22].

[3]  *See* Defs. Mot. to Dismiss Case (the "Motion to Dismiss") [ECF No. 11]; Pls.' Opp'n to the Motion to Dismiss ("Pls.' Opposition") [ECF No. 18]; and Defs.' Reply in Supp. of the Motion to Dismiss ("Defs.' Reply") [ECF No. 21].

[4]  In support of its Motion to Dismiss, the City requests that the Court take judicial notice of exhibits and facts consisting of matters of public record.  *See* Req. for Judicial Notice in Supp. of the Motion to Dismiss (the "RJN") [ECF No. 11-1].  Pursuant to Rule 201 of the Federal Rules of Evidence, the Court **GRANTS** the City's RJN in its entirety.  *See also Smith v. Los Angeles Unified*

**GRANTED**, and Plaintiffs' motion for a preliminary injunction is **DENIED as moot**, for the reasons set forth herein.

## II.  BACKGROUND

### A.    Procedural Background

On March 12, 2021, Plaintiffs commenced this action in the Riverside County Superior Court.[5]  Plaintiffs filed the operative Amended Complaint for declaratory relief and injunctive relief in the state court on March 30, 2021.[6]  In their Amended Complaint, Plaintiffs assert the following six claims for relief challenging the validity and constitutionality of the Ordinance:  (1) Declaratory Relief;[7] (2) Violation of the Equal Protection Clause of the Fourteenth Amendment;[8] (3) Violation of California Government Code § 8630;[9] (4) Injunctive Relief;[10] (5) Federal Preemption;[11] and (6) Violation of California Government Code § 36937.[12]

On April 5, 2021, Defendants removed the action to this Court, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331.[13]  Plaintiffs do not challenge the removal.

---

*School Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (courts may take judicial notice of records and reports of an administrative body); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (a court may take judicial notice of "matters of public record").

[5]    *See* Notice of Removal (the "Removal Notice") [ECF No. 1] 2:11–19; Pls.' Compl. [ECF No. 1-1].

[6]    *See* Removal Notice 3:23–4:3; Pls.' First Am. Compl. (the "Amended Complaint") [ECF No. 1-13].

[7]    *See* Amended Complaint ¶¶ 23–32.

[8]    *See id.* at ¶¶ 33 & 34.

[9]    *See id.* at ¶¶ 35–38.

[10]    *See id.* at ¶¶ 39–44.

[11]    *See id.* at ¶¶ 45–52.

[12]    *See id.* at ¶¶ 53–57.

[13]    *See* Removal Notice 5:22–26.

The City moved to dismiss Plaintiffs' Amended Complaint on April 12, 2021. Plaintiffs opposed on April 23, and the City replied on April 29. On April 16, 2021, Plaintiffs moved for a preliminary injunction. The City opposed on April 23, and Plaintiffs replied on April 30. The Court conducted a hearing on the Motions on May 14, 2021.[14]

**B.  Coachella's "Hero Pay" Ordinances**

The Hero Pay Ordinance consists of two versions:  (1) Ordinance No. 1174,[15] enacted on an urgency basis on February 10, 2021; and (2) Ordinance No. 1175,[16] introduced on a non-urgency basis on February 10, 2021, and enacted as a regular ordinance on March 10, 2021.[17]  The Ordinance "aims to protect and promote the public health, safety, and welfare during the new coronavirus 19 ('COVID-19') emergency by requiring agricultural, grocery, restaurant and retail pharmacy stores to provide premium pay for agricultural, grocery, restaurant and retail pharmacy workers performing work in Coachella."[18]  It does so in recognition of the legislative finding that those workers face "magnified risks of catching or spreading the COVID-19 disease because the nature of their work involves close contact with the public," including asymptomatic members of the public who may unknowingly spread the disease.[19]  The Ordinance concludes that "premium pay better ensures the

---

[14]    *See* Civil Minute Order [ECF No. 24].

[15]    Ordinance No. 1174 ("Ordinance 1174") [ECF No. 11-4, pp. 2–11].

[16]    Ordinance No. 1175 ("Ordinance 1175") [ECF No. 11-6].

[17]    *See* Decl. of Daniel Richards in Supp. of the Motion to Dismiss (the "Richards Decl.") [ECF No. 11-2] ¶¶ 2 & 3; *see also* Decl. of Janell Percy in Supp. of Pls.' Appl. for TRO (the "Percy Decl.") [ECF No. 14-3] ¶ 5 & Ex. C. Ordinance 1175 superseded Ordinance 1174.  *See* Richards Decl. ¶¶ 4–5.

[18]    Ordinance 1175 § 5.100.005.

[19]    *Id.*

-4-

retention of these essential workers" who are "deserving of fair and equitable compensation for their work."[20]

As relevant here, the Ordinance provides the following:

- "Hiring entities shall provide each designated worker with premium pay consisting of an additional Four Dollars ($4.00) per hour for each hour worked."[21]

- "Hiring entities shall provide the [$4.00 premium pay] for a minimum of one hundred twenty (120) days from the effective date of th[e] Ordinance."[22]

- "No hiring entity shall, as a result of this Ordinance going into effect . . . [1] Reduce a designated worker's compensation; [or 2] Limit a designated worker's earning capacity."[23]

- "'Designated worker' means an agricultural worker, grocery store worker, restaurant worker, retail pharmacy worker employed directly by a hiring entity who is entitled to premium pay pursuant to this Ordinance."[24]

- "'Hiring entity' means an agricultural operation, grocery store, restaurant, or retail pharmacy that employs over three hundred (300) designated workers nationally and employs more than five (5) employees per agricultural operation location, grocery store location, restaurant location, or retail pharmacy location in the City of Coachella."[25]

Importantly with respect to this term, the Ordinance contains a more

---

[20] *Id.*

[21] *Id.* § 5.100.050(A).

[22] *Id.* § 5.100.050(B); *see also id.* § 5.100.050(C).

[23] *Id.* § 5.100.060(A) ("Unless extended by City Council, this ordinance shall expire in one hundred twenty (120) days.").

[24] *Id.* § 5.100.020 ("Definitions").

[25] *Id.*

-5-

specific provision stating that: "[f]or purposes of this Ordinance, hiring entities are limited to those who employ three hundred (300) or more designated workers nationally and employ more than five (5) employees per agricultural operation, grocery store, restaurant, or retail pharmacy location in the City of Coachella."[26]

- "'Agricultural operation' means any operation devoted to the bona fide production of crops, or animals, or fowl including the production of and/or packing of fruits and vegetables of all kinds; meat, dairy, and poultry products; nuts, tobacco, nursery, and floral products; and the production and harvest of products from silviculture (i.e., growing/cultivating trees) activity."[27]

- "'Grocery store' means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged. There is a rebuttable presumption that if a store receives seventy percent (70%) or more revenue from retailing a general range of food products, then it qualifies as a grocery store."[28]

- "'Agricultural worker' means a worker whose principal employment is in agriculture (including farming; cultivating and tilling the soil; producing, cultivating, growing, irrigating, harvesting any commodity grown on the land; preparing, processing, packing for market and delivery to storage or to market or to carriers for transportation to market any commodity grown in or on the land), and includes migratory agricultural workers and seasonal agricultural workers. Agricultural worker does not include managers, or supervisors."[29]

---

[26] *Id.* § 5.100.040(A) ("Hiring entity coverage").
[27] *Id.* § 5.100.020.
[28] *Id.*
[29] *Id.*

-6-

- "'Grocery worker' means a worker employed directly by a hiring entity at a grocery store. Grocery worker does not include managers, supervisors, or confidential employees."[30]

- "The provisions of this Ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion of this Ordinance, or the application thereof to any hiring entity, designated worker, person, or circumstance, is held to be invalid, it shall not affect the validity of the remainder of this Ordinance, or the validity of its application to other persons or circumstances."[31]

Two days after Ordinance No. 1175 was enacted (on a non-urgency basis, superseding Ordinance No. 1174), Plaintiffs commenced this action on behalf of their members. WGA is a nonprofit association whose membership consists of local and regional family farmers who grow, pack, and ship fresh produce.[32] CFAA is a nonprofit agricultural trade association representing California's fresh fruit industry. Its membership is comprised of more than 300 members, including: growers, shippers, and marketers of fresh grapes, blueberries, and tree fruit; and associate members indirectly involved with those commodities (*e.g.*, labeling equipment, container/packaging suppliers, and commodity groups).[33] GCV is a not-for-profit organization whose focus is to protect water and other resources in the Coachella Valley.[34]

---

[30] *Id.*

[31] *Id.* § 5.100.150.

[32] *See* Amended Complaint ¶ 1.

[33] *See id.* at ¶ 2.

[34] *See id.* at ¶ 3.

# III. LEGAL STANDARD

## A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked through a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

## B. Leave to Amend

Rule 15(a) provides that leave to amend "shall be freely granted when justice so requires." The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or

technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Thus, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## IV. <u>DISCUSSION</u>

In their Amended Complaint, Plaintiffs challenge the Ordinance on the following four grounds:[35] (1) unconstitutional vagueness;[36] (2) violation of the Equal Protection Clauses of the Federal and State Constitutions;[37] (3) invalidity under California Government Code §§ 8630 and 36937;[38] and (4) federal preemption.[39] The Court addresses the sufficiency of each of these claims in turn.

### A. <u>First Claim for Relief—Declaratory Relief</u>

Plaintiffs' first claim is that the Ordinance is unconstitutionally vague and overbroad on its face. The "void-for-vagueness doctrine" is an outgrowth of the Due Process Clause of the Fifth Amendment to the United States Constitution. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *U.S. v. Williams*, 553 U.S. 285, 304 (2008). This doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes" and guards against arbitrary enforcement "by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Dimaya*, 138 S. Ct. at 1212. A statute is unconstitutionally vague if it "fails to provide a person of ordinary

---

[35] Plaintiffs also purport to assert a standalone claim for injunctive relief. *See id.* at ¶¶ 39–44 (Fourth Claim for Relief—Injunctive Relief). However, injunctive relief is a remedy, not an independent claim for relief.

[36] *See* Amended Complaint ¶¶ 23–32 (First Claim for Relief—Declaratory Relief).

[37] *See id.* at ¶¶ 33–34 (Second Claim for Relief—Equal Protection Clauses).

[38] *See id.* at ¶¶ 35–38 (Third Claim for Relief—Cal. Gov't Code § 8630) and ¶¶ 53–57 (Sixth Claim for Relief—Cal. Gov't Code § 36937).

[39] *See id.* at ¶¶ 45–52 (Fifth Claim for Relief—Federal Preemption).

intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304.

Although void-for-vagueness challenges typically arise in the criminal context, the prohibition against vagueness extends more broadly to penal statutes. *Cranston v. City of Richmond*, 40 Cal. 3d 755, 763–64 (1985). In this sense, "the degree of vagueness the Constitution tolerates . . . depends in part on the nature of the enactment." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Thus, the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 489–99. "Economic regulation," the Supreme Court has explained, "is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* at 489 (footnotes omitted). In cases where the enactment does not substantially implicate constitutionally protected conduct, "a party challenging the facial validity of an ordinance on vagueness grounds . . . must demonstrate that 'the enactment is impermissibly vague in all of its applications.'" *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (quoting *Village of Hoffman Estates*, 455 U.S. at 494–95).

Assuming that the Ordinance is penal in nature[40] (and thus is subject to more exacting scrutiny), the Court concludes that the Ordinance is not unconstitutionally vague.

---

[40] The parties dispute both whether the Ordinance is penal and whether it implicates a fundamental right. *See* Motion to Dismiss 6:3–7:18; Pls.' Opposition 6:11–8:3. The Ninth Circuit has held that a statute "cannot be unconstitutionally vague [if] it is not a penal statute or anything like one." *United States v. Christie*, 825 F.3d 1048, 1065 (9th Cir. 2016); *but cf. Dimaya*, 138 S. Ct. at 1229 (Gorsuch, J., concurring) (instead of focusing on the "the

Plaintiffs first challenge the "Purpose" section of the Ordinance, contending that it fails to "show any nexus for support for the statement gained in the purpose behind the $4.00 per hour premium pay as agricultural employees as a general rule do not have close contact with the public."[41] However, that argument challenges the legislative basis for the Ordinance, not the clarity or breadth of the Ordinance's terms.

Plaintiffs' next argument is that the statute's definitions—in particular, the definitions of "agricultural operation," "agricultural worker," and "grocery store"[42]—are vague and overbroad. The imprecision of those terms, according to Plaintiffs, contributes to the facial vagueness of the Ordinance as a whole, especially with respect to the violation and enforcement provisions. Those two arguments are best understood together.

Section 5.100.060 of the Ordinance provides, in pertinent part:

A.     No *hiring entity* shall, as a result of this Ordinance going into effect, take any of the following actions:

        1.     Reduce a *designated worker's* compensation;

        2.     Limit a *designated worker's* earning capacity.[43]

The failure to comply with any of the Ordinance's prescriptions constitutes a "violation."[44] The Ordinance is enforceable through a private right of action:

---

happenstance that a law is found in the civil or criminal part of the statute books," courts should focus on whether the statute comports with Due Process by providing fair notice). For the purpose of this analysis, the Court finds that the liquidated damages provision of the Ordinance is sufficiently penal to trigger more exacting scrutiny under the void-for-vagueness doctrine. *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985) (holding that an analogous liquidated damages provision contained in the Fair Labor Standards Act was intended to be punitive).

[41]     Amended Complaint ¶ 29(a).

[42]     *See id.* at ¶¶ 29(b)–(d).

[43]     Ordinance 1175 § 5.100.060(A) (emphasis added).

[44]     *Id.* § 5.100.100.

Any covered ***designated worker*** that suffers financial injury as a result of a violation of this Ordinance, or is the subject of prohibited retaliation under Section 5.100.090, may bring a civil action in a court of competent jurisdiction against the hiring entity or other person violating this Ordinance and, upon prevailing, may be awarded reasonable attorney fees and costs and such legal or equitable relief as may be appropriate to remedy the violation including, without limitation: the payment of any unpaid compensation plus interest due to the person and liquidated damages in an additional amount of up to twice the unpaid compensation; and a reasonable penalty payable to any aggrieved party if the aggrieved party was subject to prohibited retaliation.[45]

Based upon this language, the terms that are most important to understanding the conduct that the statute proscribes are "hiring entity" and "designated worker." As explained in the preceding section, a "hiring entity" is one that employs "three hundred (300) or more designated workers nationally and employ more than five (5) employees per ***agricultural operation***, grocery store, restaurant, or retail pharmacy location in the City of Coachella."[46] Plaintiffs' argument in this regard falls flat.

With respect to the term "agricultural operation," the focus of the Ordinance is the location of the operation and the business in which the operation is engaged (*e.g.*, "the bona fide production of crops"[47]). Next, the

---

[45]     *Id.* § 5.100.120(A) (emphasis added).

[46]     *Id.* § 5.100.040(A) (emphasis added). To the extent that the definitions of "hiring entity" in § 5.100.020 and § 5.100.040(A) conflict, § 5.100.040(A) prevails as the more specific provision between the two. *See* ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183–88 & n.3 (2012).

[47]     *See id.* § 5.100.020 (defining "agricultural operation").

-12-

term "agricultural worker" is clearly defined as including the category of workers whose principal employment is in categories of agricultural services and production.[48]  The definition of the term "grocery store" is also sufficiently specific with respect to the category of businesses that that term encompasses.[49]  The Ordinance thus provides fair notice of which "hiring entit[ies]" are subject to its prescriptions.

Similarly, § 5.100.060(A) provides specific notice of the conduct that the Ordinance proscribes.  The plain language of the Ordinance prohibits a hiring entity from circumventing the premium pay requirement by decreasing an employee's hourly wages or limiting an employee's earning capacity (*i.e.*, in comparison to the employee's ability to earn wages before the enactment of the Ordinance) as a direct result of the Ordinance taking effect.

The Court is not persuaded by Plaintiffs' argument that the prohibition against "[l]imit[ing] a designated worker's earning capacity" is vague.[50]  Black's Law Dictionary defines "earning capacity" as "[a] person's ability or power to earn money, given that person's talent, skills, training, and experience."  *Earning Capacity*, BLACK'S LAW DICTIONARY (11th ed. 2019).  In other employment contexts—*e.g.*, in cases involving workers' compensation—the Supreme Court has explained that the impairment of earning capacity means "economic harm to the injured worker from decreased ability to earn wages," with capacity defined "in relation to both the injured worker's old job and to other employment . . . ."  *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 127 (1997).  Applying the well-established understanding of the term "earning capacity" here:  to "[l]imit a designated worker's earning capacity" plainly means limiting the ability of an employee to earn wages, measured in relation to

---

[48]    *See id.*

[49]    *See id.*

[50]    *See* Ordinance 1175 § 5.100.060(A)(1).

the employee's ability to earn wages before enactment of the Ordinance. In other words, the Ordinance proscribes a hiring entity from, as a direct result of the Ordinance going into effect, limiting an employee's ability to earn his or her base compensation plus the $4 premium wage.

Plaintiffs posit several hypothetical circumstances in which they claim the applicability of the Ordinance is unclear. However, "speculation about possible vagueness in hypothetical situations not before [the court] will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1048 (9th Cir. 2005) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). Here, the Ordinance is sufficiently clear on its face to be valid in the majority of its intended applications; thus, Plaintiffs' hypotheticals are not relevant to the Court's analysis.

In sum, the Court is satisfied that the language of the Ordinance "is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness." *Village of Hoffman Estates*, 455 U.S. at 503. Accordingly, the Court finds that Plaintiffs fail to state a plausible claim for relief that the Ordinance is unconstitutionally vague. Therefore, the Court **GRANTS** the City's Motion with respect to Plaintiffs' First Claim for Relief. Furthermore, in view of the Court's finding that the plain language of the Ordinance is not unconstitutionally vague, the Court concludes that granting leave to amend would be futile. *See Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, . . . or where the amended complaint would also be subject to dismissal.") (citations omitted).

**B.  Second Claim for Relief—Equal Protection**

In their Second Claim for Relief, Plaintiffs allege that the Ordinance violates the federal equal protection clause, U.S. Const., 14th Amend., and California's analogue, Cal. Const., art. I, § 7, subd. (a).  The federal equal protection clause and its California counterpart require that similarly situated persons with respect to the legitimate purpose of a law receive like treatment. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Cooley v. Superior Court*, 29 Cal. 4th 228, 253 (2002).

When addressing an equal protection challenge to an economic regulation, a court's first step is to determine whether the statute violates a fundamental right or is "drawn upon inherently suspect distinctions such as race, religion or alienage . . . ." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).  Statutes that violate a fundamental right or that make a classification based upon alienage, nationality, or race are subject to strict scrutiny.  *See Bernal v. Fainter*, 467 U.S. 216, 220 (1984).  Otherwise, courts "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Dukes*, 427 U.S. at 303.

**1.  The Ordinance Is Subject to Rational Basis Review**

Plaintiffs contend that the Ordinance is subject to strict scrutiny because it disproportionately impacts workers with visas and non-alien workers, and, thus, it discriminates based upon alienage.[51]  In support of this argument, Plaintiffs cite *Graham v. Richardson*, 403 U.S. 365 (1971), in which the Supreme Court held that provisions of state welfare laws that conditioned benefits on citizenship and imposed durational residency requirements on aliens were subject to, and failed, strict scrutiny analysis under the equal protection clause.

---

[51]  *See* Pls.' Opposition 11:7–12:1.

See id. at 371–76.  In contrast with the statute in *Graham*, here the Ordinance does not draw any facial distinction nor condition its benefits on the basis of alienage (or any other suspect classification).  Thus, there is no "inherently suspect distinction" that would trigger strict scrutiny.  *See Dukes*, 427 U.S. at 303.  Further, the Supreme Court has not applied strict scrutiny in every case involving state restrictions on aliens; rather, the Court has altered the level of scrutiny on a case-by-case basis.  *See Korab v. Fink*, 797 F.3d 572, 592–93 (9th Cir. 2014) (Bybee, J., concurring) (citing cases).  Strict scrutiny is most often applied to state statutes that facially discriminate on the basis of citizenship (or, conversely, alienage).  *See id.* at 592.  Otherwise, courts routinely apply rational basis review to economic regulations that do not contain suspect classifications.  *See, e.g.*, *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."); *Sullivan v. Stroop*, 496 U.S. 478, 485 (1990).

The Court also is not persuaded that the Ordinance discriminates on the basis of wealth or that it burdens a fundamental right.  With respect to the former, the Supreme Court and lower courts across the country have rejected arguments that wealth discrimination triggers heightened scrutiny.  *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 18, 28–29 (1973) (wealth is not a suspect class); *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1321 (9th Cir. 1997) ("[w]ealth is not a suspect category in Equal Protection jurisprudence"); *Jensen v. Franchise Tax Bd.*, 178 Cal. App. 4th 426, 434–35 (2009) (rejecting argument that strict scrutiny applied to a tax that allegedly affected only wealthy persons).  Plaintiffs also have failed to make any plausible argument that the Ordinance burdens a fundamental right.  To the extent that

Plaintiffs contend that the Ordinance may hinder their members' ability to offer employment, that circumstance still does not implicate any fundamental right. *See Kubik v. Scripps Coll.*, 118 Cal. App. 3d 544, 549 (1981) ("the United States Supreme Court consistently has refused to recognize a fundamental right to particular employment" (collecting cases)).

Consistent with the decisions of other district courts in this Circuit, the Court concludes that the Ordinance is subject to rational basis review. *See Nw. Grocery Ass'n v. City of Seattle*, ____ F. Supp. 3d. ____ , 2021 WL 1055994, at *6 (W.D. Wash. Mar. 18, 2021), *appeal pending* 21-35205 (9th Cir.); *Cal. Grocers Ass'n v. City of Long Beach*, ____ F. Supp. 3d. ____ , 2021 WL 736627, at *6 (C.D. Cal. Feb. 25, 2021), *appeal pending* No. 21-55174 (9th Cir.).

## 2. **The Ordinance Survives Rational Basis Review**

Applying rational basis review, the Court must determine whether there exists "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313. Rational basis review reflects a strong preference for resolution of policy differences at "the polls, not [in] the courts." *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 464–65 (1955). "Where there are 'plausible reasons' for [legislative] action," the Court's inquiry is at an end. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (alteration in original) (quoting *Beach Commc'ns*, 508 U.S. at 313–14). It is "entirely irrelevant for constitutional purposes" whether the proffered rational basis was the actual motivation for the law, and "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *Beach Commc'ns*, 508 U.S. at 315. The classification set forth in the Ordinance is afforded "a strong presumption of validity, . . . and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.*

at 314–15 (citation omitted) (quotation marks omitted).  The Ordinance survives constitutional scrutiny under rational basis review.

The Ordinance's legislative findings, here, support the rationality of the premium pay requirement.  In enacting the Ordinance, the City Council considered a staff report explaining the impact of COVID-19 on agricultural workers, including impacts to the economic insecurity and health of those workers.[52]  Thus, the City decided that these risks merited premium pay to compensate those workers for the increased COVID-19-related risks that they face at work.[53]  Specifically, the City made the legislative determination that "[a]gricultural . . . workers working during the COVID-19 emergency merit additional compensation because they are performing hazardous duty due to significant risk of exposure to the COVID-19 virus."[54]  *See Cal. Grocers Ass'n*, 2021 WL 736627, at *7 (applying rational basis review and holding that "the City could have rationally decided to compensate grocery workers for taking on such risk by showing up for work").  The City's determination that "premium pay better ensures the retention of these essential workers" who are "deserving of fair and equitable compensation for their work" is, thus, rationally related to the legislative purpose.[55]

To the extent that Plaintiffs contend that it was irrational to apply the Ordinance to employers of a certain size or within a certain industry, that challenge is foreclosed by the Ninth Circuit's decision in *RUI One Corp.*, in which the court held that "such legislative decisions are 'virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.'"  *RUI One Corp.*, 371 F.3d at 1155 (quoting *Beach Commc'ns*, 508

---

[52]  *See* RJN ¶ 2, Richards Decl., Ex. C [ECF No. 11-5].
[53]  *See* Ordinance 1175 at 2; *see also id.* § 5.100.005.
[54]  *Id.* at 2.
[55]  Ordinance 1175 § 5.100.005.

U.S. at 316 ("The legislature may select one phase of one field and apply a remedy there, neglecting the others.")).

"Whether the legislation is wise or unwise as a matter of policy is a question with which [the Court is] not concerned." *Cal. Grocers Ass'n*, 2021 WL 736627, at *8 (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 447–48 (1934)). Because the Court concludes that the City's justification is not irrational, the Court's review of the Ordinance is at its end. *RUI One Corp.*, 371 F.3d at 1154.

Accordingly, the Court **GRANTS** the City's Motion with respect to Plaintiffs' Second Claim for Relief. Furthermore, for the same reasons, the Court finds that granting leave to amend would be futile. *See Steckman*, 143 F.3d at 1298.

## C.     Third and Sixth Claims for Relief—Violations of the California Government Code

Plaintiffs allege that the Ordinance violates the §§ 8630 and 36937 of the California Government Code. The Court addresses each of those alleged violations in turn.

### 1.     Cal. Gov't Code § 8630

This statute provides that "[a] local emergency may be proclaimed only by the governing body of a city, county, or city and county, or by an official designated by ordinance adopted by that governing body." Cal. Gov't Code § 8630(a). Any such proclamation expires in seven days unless it has been ratified. *Id.* § 8360(b). The statute also imposes upon the governing body an obligation to review "the need for continuing the local emergency at least once every 60 days" until the local emergency is terminated. *Id.* § 8630(c). Finally, the governing body must terminate the local emergency at the earliest possible date. *Id.* § 8630(d).

Here, the Ordinance is not a proclamation of a "local emergency" under § 8630—it merely refers to the local emergency that the City proclaimed on March 19, 2020.[56]  In this regard, Plaintiffs' only contention is that the local emergency was not a legitimate legislative purpose for enacting the Ordinance.[57] But that argument has no relation to whether the Ordinance itself violates Cal. Gov't Code § 8630.  On its face, the Ordinance does not proclaim a local emergency; thus, it is not reviewable under that California statute.

Accordingly, the Court **GRANTS** the City's Motion with respect to Plaintiffs' Third Claim for Relief.  Furthermore, for the same reasons articulated above, the Court finds that granting leave to amend would be futile.  *See Steckman*, 143 F.3d at 1298.

## 2.    Cal. Gov't Code § 36937

This statute provides that ordinances generally take effect 30 days after their final passage.  Cal. Gov't Code § 36937.  However, an ordinance takes effect immediately if it is enacted "[f]or the immediate preservation of the public peace, health or safety" and it "contain[s] a declaration of the facts constituting the urgency . . . ."  *Id.* § 36937(b).

Plaintiffs contend that Ordinance 1174 was improperly enacted as an urgency ordinance because it is not a law designed "for the immediate preservation of the public peace, health or safety" and, therefore, that the Ordinance violates Cal. Gov't Code § 36937.[58]  Moreover, notwithstanding that Ordinance 1174 was superseded by regular Ordinance 1175,[59] Plaintiffs contend

---

[56]    *See generally* Ordinance 1175; *see also* Pls.' Opposition 19:15–19.

[57]    *See id.* at 19:13–20:3.

[58]    *See id.* at 22:18–24; Amended Complaint ¶¶ 55–57.

[59]    As a regular enactment, Ordinance 1175 is not subject to Cal. Gov't Code § 36937(b).

they are impermissibly subject to liability during the urgency period of Ordinance 1174.[60]  The Court is not persuaded.

Ordinance 1175 superseded urgency Ordinance 1174, and, thus, it moots Plaintiffs' claim with respect to Ordinance 1174.  Plaintiffs' argument that they are exposed to liability under Ordinance 1174 that they would not otherwise have under Ordinance 1175 is simply incorrect—Ordinance 1175 is retroactive to the date of enactment of Ordinance 1174.[61]  Therefore, the effective period of Ordinance 1175 encompasses the urgency period of Ordinance 1174.  In sum, there is no plausible claim that the Ordinance violates Cal. Gov't Code § 36937.

Accordingly, the Court **GRANTS** the City's Motion with respect to Plaintiffs' Sixth Claim for Relief.  Furthermore, for the same reasons discussed above, the Court finds that granting leave to amend would be futile.  *See Steckman*, 143 F.3d at 1298.

### 3.    **Federal Preemption**

Plaintiffs claim that the Ordinance is preempted by the Immigration and Nationality Act (the "INA"), 8 U.S.C. §§ 1101 *et seq.*, as amended by the Immigration Reform Control Act of 1986, Pub. L. 99-603, 100 Stat. 3359 (1986), and corresponding federal regulations of wages paid to temporary agricultural workers.[62]

"Preemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  *Engine Mfrs. Ass'n v. South Coast Air Quality*, 498 F.3d 1031, 1039 (9th Cir. 2007) (citations omitted).  In the absence of express language preempting state law, "Congress may implicitly

---

[60]    *See* Opposition 22:10–17.

[61]    *See* Ordinance 1175 § 5.100.050(C) ("[t]he terms of this Section shall be in effect for one hundred twenty (120) days following the adoption of the February 10, 2021 related Urgency Ordinance").

[62]    *See* Amended Complaint ¶¶ 48–52.

preempt state law through a comprehensive regulatory scheme that occupies the entire field being regulated." *Ctr. for Bio-Ethical Reform, Inc. v. City & Cty. of Honolulu*, 455 F.3d 910, 917 (9th Cir. 2006). The Supreme Court has explained this form of preemption—known as field preemption—as follows:

> Absent explicit preemptive language, Congress' intent to supercede state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983) (internal quotation marks omitted). Federal law may also preempt state law when the state law is in actual conflict with federal law. This is known as conflict preemption:

> Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 204 (quotation marks and citations omitted).

Plaintiffs contend that Congress, via the INA, occupies the entire field of immigration regulation and, further, that 20 C.F.R. § 655.120(a) impermissibly conflicts with the Ordinance.[63]  Again, the Court is not persuaded.

As relevant here, the INA authorizes foreign workers hired to perform temporary agricultural work in the United States to obtain H-2A nonimmigrant status visas.  *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).  The payment of compensation to these employees is also regulated under federal law, which provides, in pertinent part, that:

> [A]n employer must offer, advertise in its recruitment, and pay a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, except where a special procedure is approved for an occupation or specific class of agricultural employment.

20 C.F.R. § 655.120(a).

Plaintiffs' contention—that the field of immigration includes labor and wage regulations that affect persons who are subject to federal immigration law—has been consistently rejected by other federal courts, including the Second Circuit Court of Appeals.  *See, e.g.*, *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 240 (2d Cir. 2006) (holding that there is nothing to support "an inference that Congress, by enacting IRCA, demonstrated a clear and manifest intent to supersede—at least where illegal aliens are concerned—traditional state tort or labor laws determining the compensatory damages recoverable for personal injuries"); *Familias Unidas Por La Justicia v. Sakuma Bros. Farms, Inc.*, 2014 WL 2154382, at *2–*3 (W.D. Wash. May 22, 2014) (to similar effect); *Perez–Farias v. Global Horizons, Inc.*, 2008 WL 833055, at *12–

---

[63]     *See* Pls.' Opposition 20:6–22:8.

*13 (E.D. Wash. Mar. 27, 2008) (collecting cases allowing claims under the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act, despite claims of preemption).  Indeed, as other courts have held, State labor laws occupy an entirely different field than immigration.  *See Madeira*, 469 F.3d at 240; *Familias Unidas Por La Justicia*, 2014 WL 2154382, at *2–*3.  Plaintiffs have not cited any case to support a contrary conclusion.  Accordingly, there is no support for Plaintiffs' argument that the Ordinance is preempted under the doctrine of field preemption.

Plaintiffs also claim that the Ordinance "impliedly conflicts" with 20 C.F.R. § 655.120(a).[64]  This claim faces the same fate:  Plaintiffs cannot plausibly show that compliance with both the Ordinance and 20 C.F.R. § 655.120(a) is impossible.  *See Pac. Gas & Elec.*, 461 U.S. at 204.  Indeed, 20 C.F.R. § 655.120(a) expressly incorporates the State minimum wage as one of four potential wage rates (the employer must pay the highest rate among the four).  In this regard, the Ordinance requires a hiring entity to pay the $4 per hour premium wage ***in addition*** to the employee's regular hourly rate of pay.  Thus, there is no plausible argument that the federal regulation preempts State or local regulation of wage standards.[65]  Furthermore, 20 C.F.R. § 655.135(e) provides in pertinent part that "[d]uring the period of employment [of a temporary foreign worker], the employer must comply with all applicable Federal, State and local laws and regulations, including health and safety laws."  Thus, the federal regulations expressly ***do not*** preempt State or local regulation of employment and wage standards.

---

[64]    *See id.* at 20:18–21:14; Amended Complaint ¶ 51.

[65]    Unless, of course, the State or local wage is lower than "the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal . . . minimum wage . . . ."  20 C.F.R. § 655.120(a).  But that is not the case here.

In sum, there is no plausible argument that Congress intended to preempt state and local labor regulations. Therefore, based upon the foregoing, the Court **GRANTS** the City's Motion with respect to Plaintiffs' Fifth Claim for Relief. Furthermore, for the same reasons, the Court finds that granting leave to amend would be futile. *See Steckman*, 143 F.3d at 1298.

## V.  CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1.     The City's Motion to Dismiss is **GRANTED** in its entirety, **without leave to amend**.

2.     Plaintiffs' Motion for a Preliminary Injunction is **DENIED as moot**.

3.      Judgment will issue in accordance with this Order.

**IT IS SO ORDERED.**



Dated: July 12, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-25-